IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NATIONAL TITLE AGENCY, LLC; and WILLIAM D. ROWLEY;<br><br>Plaintiffs,<br><br>v.<br><br>UNITED NATIONAL INSURANCE COMPANY,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART UNITED NATIONAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:15-cv-160-JNP<br><br>District Judge Jill N. Parrish |

Before the court is a Motion for Summary Judgment filed by defendant United National Insurance Company ("United National"). (Docket 13). The court held oral argument on the motion on January 7, 2016. At the conclusion of the hearing, the court took the motion under advisement. After considering the written submissions and the arguments presented at the hearing, the court issues this Memorandum Decision Granting in Part and Denying in Part United National Insurance Company's Motion for Summary Judgment.

## INTRODUCTION

Plaintiffs National Title Agency, LLC ("National Title") and William D. Rowley bring this action against United National asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, bad faith denial of coverage, and punitive damages. All claims arise from United National's refusal to defend and indemnify National Title and Mr. Rowley in a previous lawsuit. National Title and Mr. Rowley assert that the previous lawsuit fell within the scope of the professional liability insurance policy they had with United National.

United National seeks summary judgment, arguing that it had no duty to defend either National Title or Mr. Rowley because the previous lawsuit was not covered under the policy.

United National has demonstrated that it had no duty to defend National Title in the previous lawsuit. Specifically, the previous lawsuit falls within Exclusion J of the insurance policy because it was based on National Title's "gaining in fact [a] profit or advantage to which [it was] not legally entitled." But United National has not demonstrated that the same exclusion applies to Mr. Rowley. And the court holds that none of the other exclusions on which United National relies apply the previous lawsuit. Accordingly, the court GRANTS IN PART AND DENIES IN PART United National's Motion for Summary Judgment.

## FACTUAL BACKGROUND

The following facts are, unless otherwise noted, undisputed by the parties to these motions and are construed in the light most favorable to National Title.

National Title was an escrow and title agent that closed real estate loan transactions on behalf of First American Title Insurance Company ("First American"). In 2013, First American filed a lawsuit against National Title and its sole owner, Mr. Rowley (the "First American Lawsuit"). First American alleged that National Title failed to protect an escrow account by allowing approximately $600,000 in clients' escrowed funds to be garnished by National Title's judgment creditors. The funds were garnished to satisfy two judgments entered against National Title from lawsuits filed in 2008 (the "2008 Lawsuits"). It is undisputed that National Title was not legally entitled to use the escrow funds to satisfy its corporate liabilities.

The first of the two 2008 Lawsuits involved a third-party claim against National Title in a state court case, *Bell v. Hemsley* (the "Bell Lawsuit"). The third-party claimant alleged that National Title improperly disbursed escrow funds in a loan transaction before requiring

appropriate parties to sign deed documents in person. National Title defaulted and a judgment was entered against it in the amount of $95,000 plus interest.

The second of the 2008 Lawsuits involved a state court suit entitled *Hill v. Tibbitts* (the "Hill Lawsuit"). The allegation in that suit was that National Title improperly wired money to third parties that had defrauded the *Hill* plaintiffs. National Title again defaulted and a judgment of approximately $515,000 was entered against it.

The judgment creditors in the 2008 Lawsuits subsequently garnished funds from a bank account held in National Title's name. The account was an escrow account that National Title held for First American. The garnished funds fully satisfied the judgments from the 2008 Lawsuits. National Title claims that it did not discover the garnishment, until about October 10, 2013, when the bank notified it that the funds in the escrow account were short.

Earlier in 2013, National Title had purchased a claims-made professional liability insurance policy from United National (the "Policy" or "United Policy"). The Policy's coverage period ran from March 26, 2013, to March 26, 2014. National Title notified United National of First American's claims on November 18, 2013. The First American Lawsuit was filed on November 26, 2013. United National denied coverage and refused to defend National Title or Mr. Rowley in the First American Lawsuit. National Title and Mr. Rowley subsequently brought this lawsuit against United National alleging, inter alia, that United National had breached its insurance contract with National Title by refusing to defend and indemnify National Title and Mr. Rowley for the claims in the First American Lawsuit.

## DISCUSSION

United National advances three reasons supporting its assertion that the Policy provided no coverage for National Title or Mr. Rowley in the First American Lawsuit. First, it argues that the First American Lawsuit and the 2008 Lawsuits are expressly excluded from coverage under

the Policy as "interrelated wrongful acts." Second, United National argues that the First American Lawsuit falls outside the coverage period because it is a claim that the Policy deems to have been first made in 2008. Third, it argues that the First American Lawsuit is excluded from coverage because it is based on National Title's and Mr. Rowley's gaining of a profit or advantage to which they were not legally entitled. After setting forth the applicable legal standards, the court will address each of these arguments in turn.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quoting *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013)). On a motion for summary judgment, the court "consider[s] the evidence in the light most favorable to the non-moving party." *Conroy v. Vilsack*, 707 F.3d 1163, 1170 (10th Cir. 2013) (quoting *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011)). However, "[w]hen the moving party has carried its burden, . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citations omitted).

I.    **The First American Lawsuit and the 2008 Lawsuits are not interrelated wrongful acts as defined by the Policy.**

United National's first argument is that the wrongful acts alleged in the First American Lawsuit are interrelated to the wrongful acts that were the subject of the 2008 Lawsuit. This argument requires the court to interpret three distinct provisions of the Policy: the interrelated

4

wrongful act exclusion, the Policy's definition of wrongful act, and the Policy's definition of interrelated wrongful acts. As United National's argument turns on the precise language of each provision, the court quotes each in full.

> Under the wrongful act exclusion, the Policy excludes coverage for any claim:
>
>> Alleging, based on, arising out of, or attributable to: 1) Any 'wrongful act,' fact, circumstance or situation which has been the subject of any written notice given under any other policy of which this 'policy' is a renewal or replacement or which it succeeds in time; or 2) Any other 'wrongful act,' whenever occurring which, together with a 'wrongful act' which has been the subject of such notice would constitute 'interrelated wrongful acts.'

The Policy defines a "wrongful act" as "any actual or alleged negligent act, error, omission, misstatement, misleading statement or 'personal injury offense' committed by the 'insured' or by any other person or entity for whom the 'insured' is legally liable in the performance of or failure to perform 'professional services.'" The Policy then defines "interrelated wrongful acts" as "'wrongful acts' that have as a common nexus, any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes."

To determine whether wrongful acts are interrelated under the Policy, the court must first identify the wrongful acts themselves. The wrongful act in the Bell Lawsuit was National Title's improper dispersal of loan proceeds without securing the proper documentation. In that case, the plaintiff alleged that National Title was negligent by not requiring the individuals executing the deeds to be physically present when the trust deeds were executed. The wrongful act in the Hill Lawsuit was the negligent dispersal of funds that were wired to it by the plaintiffs in conjunction with a real estate fraud scheme. In contrast, the wrongful act in alleged in the American First Lawsuit is that National Title improperly allowed funds held in its escrow account to be

garnished. Thus, the "alleged negligent act, error, [or] omission" was the failure to safeguard the escrow account.

United National argues that the wrongful acts are interrelated because the garnishment resulting in the First American Lawsuit arose from the execution on the judgments rendered in the 2008 Lawsuits. Specifically, it argues that "National Title's current alleged failure to protect escrowed funds from the execution on the [2008 Lawsuit's judgments] is interrelated to National Title's alleged acts that grounded that very judgment because the current and prior actions have a 'common nexus' of 'fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions, or causes.'"

The *reason* for the garnishment, however, is irrelevant to the question of whether the wrongful acts that underlie the First American Lawsuit are interrelated wrongful acts with those alleged in this case. All of the claims in the First American Lawsuit arise from National Title's alleged wrongful failure to prevent the escrow funds from being garnished. None of the claims depend upon the specific circumstances giving rise to the liability that resulted in the garnishment. And the fact that the earlier lawsuit was a but-for cause of the garnishment does not render it part of the wrongful acts alleged in the First American Lawsuit. In other words, the underlying judgments giving rise to the garnishment are not part of the "actual or alleged negligent act, error, omission, misstatement, [or] misleading statement." The wrongful act, as defined by the Policy, was wrongfully allowing the funds to be garnished. Because the reason for the garnishment does not form a part of the wrongful act, it cannot serve as the "common nexus of fact" that would be required for the 2008 Lawsuits and the First American Lawsuits to qualify as interrelated wrongful acts under the Policy.

The wrongful acts alleged in the First American Lawsuit do not have a common nexus of material fact with the wrongful acts alleged in the 2008 Lawsuits. Under the plain language of the Policy, the wrongful acts that resulted in the adverse judgments in the 2008 Lawsuits are not interrelated with the wrongful acts alleged in the First American Lawsuit. Accordingly, the First American Lawsuit is not excluded as an interrelated wrongful act under the Policy.

II.     **The claim date for the First American Lawsuit is within the coverage period.**

United National's second argument is that the operative claim date is outside the Policy's coverage period. Under the terms of the Policy, all claims arising out of interrelated wrongful acts are treated as one claim and are deemed to date back to the earliest claim date. United National again argues that the wrongful acts alleged in the First American Lawsuit are interrelated with the wrongful acts alleged in the 2008 Lawsuits. United National then argues that the First American Lawsuit's operative claim date is 2008 and is therefore outside the coverage period. However, as just discussed, the wrongful acts in the various lawsuits are not interrelated under the Policy. Accordingly, the claim date for the First American Lawsuit is the date that National Title first notified United National of the claims, namely November 18, 2013. This claim date is within the coverage period.

III.    **The claims made in the First American Lawsuit against National Title, but not those against Mr. Rowley, are excluded under the profit or advantage exclusion.**

United National's final argument is that the First American Lawsuit falls within Exclusion J of the Policy. In Exclusion J, the Policy excludes coverage for all claims "alleging, based on, arising out of, or attributable to" the "gaining in fact of any profit or advantage to which the 'insured' is not legally entitled." United National points out that the First American Lawsuit arises from the fact that National Title allowed the funds it held in escrow to be garnished to satisfy its own liabilities. And it is undisputed that National Title was not legally

entitled to the benefit of the funds in the escrow account. Thus, when the escrow funds were used to extinguish National Title's adverse judgments, National Title and Mr. Rowley gained a "profit or advantage to which [they were] not legally entitled."

The exclusion's language is neither vague nor ambiguous. To determine whether the exclusion applies, the court must first consider whether National Title or Mr. Rowley "gain[ed] in fact . . . any profit or advantage to which [they] were not legally entitled." If so, then the court must consider whether the First American Lawsuit arises out of or is attributable to that gain.

It is undisputed that neither National Title nor Mr. Rowley were legally entitled to the funds in the escrow account. And it is undisputed that National Title received a profit or advantage as a result of the garnishment. Prior to the garnishment, National Title had outstanding judgments against it of nearly $600,000. The garnishment fully satisfied these judgments. This is undoubtedly a profit or advantage to National Title. But it is disputed whether Mr. Rowley received a profit or advantage as a result of the garnishments. Indeed, at oral argument, United National admitted that further discovery was needed to determine whether the satisfaction of National Title's outstanding judgments resulted in a profit or advantage to Mr. Rowley.[1]

Having determined that the garnishment resulted in a profit or advantage to which National Title was not legally entitled, the court must determine whether the First American Lawsuit is a claim "alleging, based on, arising out of, or attributable to" that profit or advantage. National Title argues that the "profit or advantage" exclusion in the Policy requires that "an element of the underlying claim asserted against the insured . . . must be illegal gain." National Title admits that there is no Utah case law directly on point, and thus relies on courts from other jurisdictions to support its argument. But the cases on which National Title relies are interpreting

---

[1] It appears that Mr. Rowley was not personally liable for the outstanding judgments in the 2008 Lawsuits. It is unclear whether Mr. Rowley actually received a profit or advantage when National Title's outstanding judgments were satisfied.

"profit or advantage" exclusions from policies that use different language than that used in the United Policy. Accordingly, those cases are of little persuasive value. As the Utah Supreme Court has instructed, "[a]n insurance policy is merely a contract between the insured and the insurer and is construed pursuant to the same rules applied to ordinary contracts." *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993). Accordingly, the interpretation of the United Policy depends on its specific language.

Although there appears to be no Utah case law interpreting the specific "profit or advantage" exclusion in the Policy, there is Utah law interpreting the phrase "arising out of" in liability insurance policies. The Utah Supreme Court has explained that, "[a]s used in a liability insurance policy, the words 'arising out of' are very broad, general and comprehensive. They are commonly understood to mean originating from, growing out of, or flowing from, and require only that there be some causal relationship." *Nat'l Farmers Union Prop. & Cas. Co. v. W. Cas. & Sur. Co.*, 577 P.2d 961, 963 (Utah 1978); *see Meadow Valley Contractors v. Transcon. Ins. Co.*, 27 P.3d 594, 597 (Utah Ct. App. 2001) (noting the unambiguous and broad interpretation of "arising out of" in the context of a liability insurance policy). This interpretation is consistent with the broad phrasing used in the Policy's "profit or advantage" exclusion—"alleging, arising out of, based on, or attributable to."

To fall within the profit or advantage exclusion, a claim need only originate from, grow out of, or flow from, a gain to which the insured was not legally entitled. *Nat'l Farmers*, 377 P.2d at 963. Only "*some* causal relationship" is required. *Id.* (emphasis added). It "need not be the proximate cause of the injury in the legal sense." *Id.* And an illegal gain need not be an element of the claim.

9

In this case, the First American Lawsuit does "arise out of" the gain received by National Title. National Title received an advantage to which it was not legally entitled when its customer's escrow funds were garnished to satisfy National Title's debts. The First American Lawsuit originates or flows from that event, even if it is not the proximate cause of the injury in the legal sense. Accordingly, the claims in the First American Lawsuit against National Title are excluded from coverage under the Policy. United National is therefore entitled to summary judgment as to the claims asserted against it by National Title.

## CONCLUSION

For the reasons stated above, the court determines that the claims in the First American Lawsuit are not excluded from coverage under the interrelated wrongful acts exclusion. And the operative claim date of the First American Lawsuit is within the Policy's coverage period. But the claims against National Title in the First American Lawsuit are excluded under the profit or advantage exclusion. And further discovery is needed to determine whether the claims against Mr. Rowley are similarly excluded from coverage. Accordingly, the court GRANTS IN PART AND DENIES IN PART United National's Motion for Summary Judgment. (Docket 13).

Signed March 21, 2016.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge